No. 3498.—SUCCESSION OF CHARLES KOCK—Opposition to account of Testamentary Executor.

The designation and fixing by the testator in his will the per cent. which his executors are to receive as compensation for administering his estate, does not constitute them universal legatees, or legatees by universal title. And they, the executors, are not therefore bound to contribute to the payment of the debts.

Where the rate or per cent. of commissions allowed the executors has been fixed by the testator for administering his estate, they are entitled to such rate of commissions on all the property inventoried as composing the estate, and the heirs who have postponed by legal proceedings the sale of certain property which the executors are directed by the will to sell, can not make successful opposition to the payment of the commissions, on the ground that the property has not been administered upon and sold according to the wishes of the testator.

APPEAL from the Second District Court, parish of Orleans. *Duvignaud*, J. *W. O. Denegre*, for opponents and appellants. *J. A. Rozier*, and *Clark, Bayne & Renshaw*, for executors appellees.

WYLY, J. The question presented for adjudication in this case is, shall the testamentary executors of Charles Kock receive as compensation for their services the commissions stated in the will, on the pro-

ceeds of the entire estate, or only on the proceeds remaining after the payment of all the debts? In the will we find the following clauses: "I appoint as tutors of my children, of which five are minors yet, my brother-in-law Michel Musson, and my son-in-law Edmond Cramer, and also as executors of my last will, asking them to take for their counsellor and legal adviser, Judge J. N. Lea, allowing each of these three persons, a commission of two per cent. on the proceeds of my individual property. If any of them should decline to act as executor or tutor, the accepting ones may choose another one. I make it incumbent and obligatory upon my executors to realize the whole of my real estate in the city and country, whenever and as soon as it can be done at anything like a fair price.　*　*　*　* The whole amount realized after deduction of the expenses and commissions and the legacies mentioned hereafter, shall, like the portion coming to my children from their mother, be equally divided among the surviving children.　*　*　*　*　* If Judge Lea should decline or is prevented from becoming my executor, I wish that Charles Andrew Johnson may take his place."

In the codicil to the will there is the following clause: "I nominate and appoint the tutors of my children, Mr. Edmond Cramer and Mr. Michel Musson and in conjunction with them, Judge J. N. Lea, the executors of this my last will, having all confidence in any and all of them that they will do justice to my widow and children."

A fair interpretation of the clauses of the will cited, is that the executors named by the testator shall receive as compensation for their services, two per cent. commissions each on the entire mass of the property or its proceeds. This was the undoubted intention of the testator. But the heirs who oppose these items of the executors' accounts contend, as the rate of compensation is a per cent. on the whole estate, therefore, the executors are heirs by universal title; and as such, they are each bound for his share of the debts. Of course the heirs by universal title can only take the property remaining after payment of the debts; and in case they accept the succession unconditionally, they become bound each for his virile share of the debts of the deceased. But because the testator has fixed in the will the commissions of his executors at a different rate from that fixed by law, shall we say that they thereby became his universal legatees or heirs by universal title, and are bound, therefore, to contribute to the payment of the debts?

Will it for a moment be contended, that the interest of these executors in the estate would be enhanced by the death of the other heirs, or by the lapse of the special legacies from the incapacity of such legatees to take, or from any cause? Surely not. The death of all the heirs, the forced heirs, named in the will, if occurring prior to the death

of the testator, would not inure to the advantage of the executors or increase their interest in the estate.

The percentage allowed by the testator to the executor, was not an unconditional legacy to them. They were to receive it only after accepting the appointment and discharging the duties of the office. It was merely a remuneration for the services of these executors to be performed after the death of the testator. Now, whether the rate of compensation for these services was fixed in the will, or supplied by the law as part thereof, is of no consequence. In neither case would it constitute the testamentary executors the universal legatees or legatees by universal title.

If the lapse of the special legacies, or the death of the co-heirs prior to the death of the testator, would not inure to the advantage of the executors or increase their interest in the estate, they certainly are not the universal legatees.

A bare glance at the will, will show who are the universal legatees of the testator.

It says: "The whole amount realized after deduction of the expense and commissions and the legacies hereafter mentioned, shall, like the portion coming to my children from their mother, be equally divided among the surviving children," etc.        *    *    *    *    *    *.

The children of the testator are undoubtedly his universal legatees; and the lapse of the special legacies from any cause, would inure to their advantage and not to the benefit of the executors. The conclusion is, therefore, inevitable, that the executors are not the universal legatees, and are not bound to contribute to the payment of the debts of the testator. It was not the intention of the testator that they should have the commissions mentioned in the will only on the residue of the estate after the payment of all the debts. In case the debts were equal to the entire proceeds of the estate, under the theory of the opponents, the executors would get no compensation, notwithstanding the services performed, and notwithstanding their large responsibilities in administering the estate inventoried at $ 535,514 64. The greater the embarrassment of the estate, the greater the responsibilities of those administering it. And the interpretation sought to be placed on the will by the heirs, is a manifest legal absurdity. The commissions charged in the account and homologated by the court, notwithstanding the objections set up in the opposition of the heirs, we think the executors are entitled to have under the will.

As to the objection that the executors should not have commissions on that part of the property administered by them in the parish of Assumption, because the plantation has not been sold as was contemplated by the dispositions of the will, we will remark that it is made with bad grace by the heirs, who have caused it to be postponed by

the advice of a family meeting advising that said property be not sold, but that the said plantation be cultivated for the benefit of the heirs. After preventing the executors from selling this part of the property according to the directions of the will, the heirs ought not to be heard to complain because the executors demand their commissions on its appraised value, which is presumed to be equal to the proceeds thereof if sold.

There are other objections which it is unnecessary to examine, because the view we have taken of the leading question presented disposes of the case.

As we are bound to give effect to the dispositions of the will, not prohibited by law, it is useless for the heirs to appeal to the sympathies of the court.

Judgment affirmed.